IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **US RISK OF VIRGINIA, LLC f/k/a** | § | |
| **LIGHTHOUSE UNDERWRITERS, LLC** | § | |
| **f/k/a LIGHTHOUSE ACQUISITION, LLC,** | § | |
| **and ALPINE UNDERWRITERS, LLC,** | § | |
| **LIGHTHOUSE UNDERWRITERS, LLC,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-2033-L** |
| | § | |
| **LIGHTHOUSE PROGRAMS LLC, d/b/a** | § | |
| **LIGHTHOUSE LLC,** | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are: (1) Plaintiffs' Motion for Partial Summary Judgment, filed May 5, 2008; and (2) Motion to Strike Plaintiffs' Summary Judgment Evidence, filed May 27, 2008. After carefully considering the motions, briefing, record, and applicable law, the court **grants in part** Plaintiffs' Motion for Partial Summary Judgment and **denies** Motion to Strike Plaintiffs' Summary Judgment Evidence.

**I.     Factual and Procedural Background**

Plaintiffs U.S. Risk Insurance of Virginia, LLC f/k/a Lighthouse Underwriters, LLC f/k/a Lighthouse Acquisition, LLC and Alpine Underwriters, LLC f/k/a Lighthouse Underwriters, LLC (collectively, "Plaintiffs") filed their Complaint for Trademark Infringement against Defendants Risk Transfer Holdings, Inc. and Lighthouse Programs LLC d/b/a Lighthouse LLC on November 6, 2006. Plaintiffs brought claims of trademark infringement, pursuant to 15 U.S.C. § 1114, and false designations and false representations, pursuant to 15 U.S.C. § 1125(a). They seek treble

**Memorandum Opinion and Order – Page 1**

damages, attorney's fees, restitution, costs, and a permanent injunction. Plaintiffs have moved for partial summary judgment, seeking a judgment in their favor with respect to liability on their section 1125(a) claim and a permanent injunction.

On September 12, 2008, Plaintiffs moved to amend their complaint and to dismiss Defendant Risk Transfer Holdings, Inc. without prejudice. The court granted the motion, and Plaintiffs filed the live pleading, the First Amended Complaint, on September 17, 2008.

Plaintiff Lighthouse Underwriters, LLC ("Lighthouse Underwriters") is an insurance brokerage and managing general agency. It contends that it has used the Lighthouse name since November 1998. On April 16, 2002, it applied for and later received a trademark registration for its name as used in connection with International Class 36 (Insurance Products and Related Services). Plaintiff U.S. Risk of Virginia, LLC ("U.S. Risk") is the successor to Lighthouse Underwriters and still uses the Lighthouse Underwriters name to do business. U.S. Risk is in the business of marketing, underwriting, and selling insurance products to Professional Employee Organizations (PEOs) and temporary staffing firms. U.S. Risk owns two trademarks, registration numbers 2,749,690 and 3,012,977, the registered lighthouse word and design.

U.S. Risk sells a product called Lighthouse StaffPak, which can include different kinds of insurance for PEOs and temporary staffing firms. U.S. Risk does not sell worker's compensation insurance.

Defendant Lighthouse Programs, LLC ("Lighthouse Programs") sells worker's compensation insurance programs for PEOs and temporary staffing entities. Lighthouse Programs is a subsidiary of Risk Transfer Holdings, Inc. ("Risk Transfer"), an entity that was dismissed without prejudice

on September 16, 2008. According to Plaintiffs, Lighthouse Programs promotes itself as "Lighthouse LLC" and "Lighthouse."

Lighthouse Underwriters and Risk Transfer entered into two broker agreements, on March 7, 2002, and October 24, 2002. On January 1, 2003, Risk Transfer created Lighthouse Programs. On February 15, 2005, a press release was published in the Insurance Journal announcing that "Lighthouse LLC" was offering workers' compensation insurance. Lighthouse Underwriters began receiving telephone calls regarding workers' compensation insurance, and on February 23, 2005, Arthur B. Seifert, the President and CEO of the Lighthouse Companies wrote to Paul R. Hughes, the CEO of Risk Transfer, asking him to cease and desist from using the mark "Lighthouse, LLC."

Lighthouse Underwriters and Risk Transfer had other business transactions; they entered into a Producer Agreement on July 18, 2006. Plaintiffs contend that the situation became "intolerable" when Risk Transfer began using the Lighthouse name more extensively in its advertising. They acknowledge that the graphic designs are not identical, but that Defendant consistently uses the word "lighthouse" and incorporates a lighthouse theme into its advertising.

Plaintiffs contend that the use of lighthouse advertising by Risk Transfer created confusion among consumers during the October 2007 National Association of Professional Employer Organizations ("NAPEO") Conference. Their evidence of confusion includes e-mails and declarations stating that customers were confused as to the affiliation between the companies, interest in the companies, and mistakes as to the products offered by the companies.

Defendant contends it has been using the lighthouse name and theme since 2001. It claims that its lighthouse mark uses a realistic-looking lighthouse that is based on the Sandy Neck lighthouse near Barnstable, Massachusetts. Defendant largely does not dispute the factual

background set forth by Plaintiffs, but argues that Plaintiffs trademark claims fail as a matter of law for a variety of reasons.

## II.     Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Defendant's Motion to Strike Plaintiffs' Summary Judgment Evidence

Before reaching the substantive arguments regarding summary judgment, the court considers Defendant's motion to strike Plaintiffs' summary judgment evidence. Defendant objects to statements of fact it contends lack supporting evidence, statements in the Kathy O'Toole declaration, and to Plaintiffs' Exhibits K & L, e-mails from confused customers. Plaintiffs respond that the motion is essentially further argument on the motion for summary judgment and that the objected-to evidence is not hearsay because it is not offered for the truth of the matter asserted.

The court has reviewed Defendant's motion. To the extent Defendant argues that there is insufficient evidence to support Plaintiffs' fact contentions, the court denies the motion and

determines that this is an argument regarding the sufficiency of the evidence to be considered in ruling on the substance of the summary judgment motion. The court also denies the remainder of Defendant's objections and determines that the evidence regarding customer confusion and the statements in the O'Toole declaration are provided not to prove the truth of the matter asserted, but as evidence to show that customers thought or believed the entities in question to be the same. *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 n.10 (5th Cir. 1982). Accordingly, the court **denies** the Motion to Strike Plaintiffs' Summary Judgment Evidence.

### IV. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on liability pursuant to 15 U.S.C. § 1125(a) and also ask the court to issue a permanent injunction; they are not moving for summary judgment on damages or on their infringement claim brought pursuant to 15 U.S.C. § 1114(a). They contend that the evidence shows likelihood of confusion and that they are entitled to summary judgment that Defendant has infringed pursuant to section 1125(a) and a permanent injunction. Defendant responds that Plaintiffs have failed to show any ownership of any right to the "Lighthouse" mark and that its use of lighthouses is not confusingly similar.

#### A. Plaintiff's Ownership of Lighthouse Mark

Defendant argues that Plaintiffs are not entitled to summary judgment on their claim of infringement because they have failed to demonstrate ownership of any right to the term "lighthouse." It contends that there is no state or federal registration of the term "lighthouse" standing alone, there is no proof of common-law ownership of the term "lighthouse," and that Plaintiffs cannot show a superior right to the rights Defendant has developed since 2001.

Plaintiffs respond that they are moving pursuant to section 1125(a) and do not need to show that the mark is registered. They also point to evidence that they adopted the name "Lighthouse Underwriters, LLC" in 1998. They have used the name in brokers' agreements, in trade, and on their website. They contend that Defendant's only evidence that it has used the name is a statement by Hughes and that there is no evidence that it used the name in trade.

The court has reviewed the evidence and determines that Plaintiffs have shown that they have used the name "Lighthouse Underwriters, LLC" in trade since 1998. Under section 1125(a), Plaintiffs need not demonstrate valid registration. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *see also Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas*, 909 F.2d 839, 842 (5th Cir. 1990) ("Ownership of trademarks is established by use, not registration."). Defendant's own evidence shows that it did not use the name until 2001. Although Defendant raises the issue that Plaintiffs did not bring suit for infringement until 2006, it has not moved for summary judgment on its affirmative defenses of laches or estoppel. Plaintiffs have shown that, pursuant to section 1125(a), the term "lighthouse" is a valid mark.

### B. Likelihood of Confusion

Plaintiffs contend that they are entitled to summary judgment on infringement and that the test for infringement under the Lanham Act is likelihood of confusion. Plaintiffs argue that the factors the court is to consider weigh in favor of a finding of a likelihood of confusion; Defendant asserts that all of the factors weigh in its favor.

Plaintiffs move for summary judgment only on the section 1125(a) claim. That statute provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name,

> symbol, or device, or any combination thereof, or any false designation of origin, false, or misleading description fo fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, service, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). To prevail on this claim, Plaintiffs must show that Defendant's use of the lighthouse name creates a likelihood of confusion. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000). The court has set forth a nonexhaustive list of eight factors to consider in determining whether a likelihood of confusion exists:

> (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers.

*American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008); *see also Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). No factor is dispositive, and the court can consider other relevant factors. *Westchester Media*, 214 F.3d at 664. The court now considers each of these factors in turn.

### 1. Strength of Plaintiff's Mark

Plaintiffs contend that the lighthouse mark is a suggestive or arbitrary mark and is entitled to protection. Defendant argues that it is an extremely weak mark because there are millions of Google hits for the word "lighthouse."

Trademarks are generally classified by five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos*, 505 U.S. at 768. The Fifth Circuit has stated that these categories can be considered a spectrum, and "within this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks." *American Rice*, 518 F.3d at 330 (internal bracket, quotation, and citation omitted). A generic term is "one which identifies a genus or class of things or services, of which the particular item in question is merely a member." *Union Nat'l Bank*, 909 F.2d at 845. A descriptive term is one that "identifies a characteristic or quality of the article or service." *Id*. (quotation and citation omitted). A suggestive term "suggests rather than describes some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of goods and services." *Id*. (quotation and citation omitted). Arbitrary and fanciful terms are "those which are either coined words or words which are not suggestive of the product or service." *Id*.

The term "lighthouse" is not tied explicitly to the insurance products sold by the parties; it may suggest ideas of security or safety to a consumer, but it is neither a generic nor a descriptive term in this context. Accordingly, the court agrees that the lighthouse mark falls within one of the categories of suggestive, arbitrary, or fanciful, and therefore is "deemed inherently distinctive and . . . entitled to protection." *Two Pesos*, 505 U.S. at 769. Because Defendant fails to provide any case authority to support its argument and fails to dispute that the lighthouse mark is suggestive, arbitrary, or fanciful, the court determines that this factor weighs in favor of Plaintiffs.

## 2. Similarity of Design Between the Marks

Next, the court considers the similarity between the marks. Plaintiffs argue that both parties use the term "lighthouse" alone and in stylized designs. Defendant contends that the parties' design marks are vastly different and Plaintiffs' own trademark counsel has recognized this. Defendant points out that its use of the lighthouse motif uses a realistic-looking lighthouse based upon an actual lighthouse, while Plaintiffs use a "modern" looking lighthouse. Defendant also points to a statement made by an examining attorney in the context of refusing to register Plaintiffs' lighthouse design mark in light of an existing trademark registration. That attorney, comparing Plaintiffs' lighthouse to the existing mark, stated that the "stylized character of [Plaintiffs'] Logo makes it legally distinguishable from, and not confusingly similar, to realistic-looking lighthouse reflected in" the existing logo.

Plaintiffs rely upon *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133 (2d Cir. 1999), in which the court held that the use of the word "Morningside" in the company's name weighed in favor of the plaintiff on the similarity of the marks factor. That court noted:

> We find unpersuasive any notion that the two marks are dissimilar. Consider again the full name of the two entities: "The Morningside Group Limited" and "Morningside Capital Group, L.L.C." Only one word stands out as dominant in the two names, and that – the only arbitrary word – is "Morningside." . . . Considering the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember, we find it clear that the similarity between the two names would be likely to cause confusion among ordinarily prudent consumers in the investment world.

*Id*. at 140 (citation and quotations omitted). The facts in *Morningside* are quite similar to those in this case insofar as the parties used the same word in their company name, and the court finds this authority persuasive with respect to Defendant's use of the name "Lighthouse Programs."

The only difference between the names "Lighthouse Programs," "Lighthouse LLC," and "Lighthouse Underwriters" is the second word in the company name. "Underwriters," "Programs," and "LLC" expound on the corporate aspect of the entity; the names focus on the word "lighthouse" in these names. Accordingly, the court finds that the names used by the parties are extremely similar. The graphic images used by the parties present a closer call. As Defendants point out, there are differences between the modern, stylized lighthouse used by Plaintiffs and the more realistic-appearing lighthouse they use, but the court does find that there are some similarities between the graphics used by the parties.

The court determines that this factor weighs in favor of Plaintiffs. The names used by the parties are nearly identical, and that the graphic depictions of the lighthouses are somewhat different does not prevent a finding that marks are similar based upon the use of the word "lighthouse."

### 3. Similarity of the Products

The court next considers whether the disputed products or services are similar. Plaintiffs argue that the parties sell and market insurance products to the same industry and thus this factor weighs in their favor. Defendant contends that it offers certain specialized lines of insurance and does not overlap in sales with Plaintiff.

The court concludes that this factor is neutral. While the parties do not sell the same product, it is clear that the lighthouse entities advertise to the same market, the PEO market, and sell insurance products. While Defendant points out that "[t]he PEO will know the difference" between Plaintiffs and Defendant, the only evidence of this is the statement of Hughes, Defendant's founder. The court determines that a fact issue remains as to whether there is a similar product or service in this case.

### 4. Identity of Retail Outlets and Purchasers

Next, the court considers whether the parties sell to similar retail outlets and purchasers. Plaintiffs contend that they cater to the same group of customers as Defendant. Anticipating Defendant's argument that PEOs are sophisticated consumers, they argue that there is evidence of actual confusion in this case, which makes this factor weigh in their favor. Defendant argues that the products sold by the parties are professional products and there is only some overlap in the products that they sell. As with the third factor, the court determines that there is a fact issue as to this factor and thus it does not weigh strongly in favor of Plaintiffs or Defendant. The court will address the issue of actual confusion below.

### 5. Similarity of Advertising

Plaintiffs contend that the parties advertise their products through the same channels, at the same trade shows, and in the same trade magazines. Defendant contends that neither party advertises heavily and that when they do use print advertising, the companies are readily distinguishable.

The court finds that this factor weighs in favor of Plaintiffs. The evidence establishes that the parties attend the same trade shows and that there is some confusion between the parties at those shows. When print advertisements are used, the evidence before the court shows that the parties advertise in the same trade magazines.

### 6. Defendant's Intent

Plaintiffs contend that Defendant knew that they used the lighthouse name and the parties signed contracts including a clause in which Risk Transfer agreed not to advertise using the lighthouse name. Defendant contends that even if it knew that Plaintiffs used the mark, it had no

intent to infringe. It claims that Hughes used the lighthouse mark for personal reasons and he believed that it was a common symbol used in the insurance industry. Risk Transfer conducted a trademark search in May 2002 and did not learn of Plaintiffs' purported rights to the "lighthouse" mark.

Plaintiffs' evidence shows that Risk Transfer signed contracts stating that it would not use the lighthouse name, and those contracts define the term as "Lighthouse Underwriters, LLC." Since Risk Transfer has been dismissed from the case, there is no evidence that Lighthouse Programs, LLC had the intent to infringe the "lighthouse" mark. Accordingly, the court finds that this favor weighs in favor of Defendant.

### 7. Actual Confusion

Although Plaintiffs need not show proof of actual confusion, they contend that their summary judgment evidence establishes that there is actual confusion to consumers caused by Defendant's use of the lighthouse name. They point to contacts from their customers inquiring about workers' compensation insurance, which it does not provide, and confusion about the associations between Plaintiffs and Defendant. They also point to evidence that attendees of the NAPEO conference were confused by the two lighthouse booths that were close to each other.

Defendant responds that Plaintiffs' evidence is inadmissible and they do not demonstrate a likelihood of confusion. They contend that the only evidence of confusion comes from the 2007 NAPEO conference and that since there is no evidence other than from this trade show, this evidence actually shows that the likelihood of confusion is low. It also contends that the e-mails submitted appear "contrived" and that a fact issue exists as to whether there has been actual confusion.

The court has already ruled that the evidence submitted is admissible because it is not submitted for the truth of the matter asserted. The court has reviewed the e-mails and affidavits and finds that they are not "contrived" but demonstrate confusion on the part of consumers. Consumers contacted Plaintiffs seeking worker's compensation insurance, a product not offered by Plaintiffs but sold by Defendant. Moreover, contrary to Defendant's assertion, the instances of confusion are not limited to the time around the NAPEO conference. There is one e-mail from September 2006 and one from April 2008, indicating that there was confusion both before and after the NAPEO conference. "[W]hile very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971).

The court finds that this factor weighs in favor of Plaintiffs. There is some evidence of actual confusion, and the threshold is low for such evidence to prove the likelihood of confusion. Defendant's founder's statement that he knows of no confusion does not create a fact issue in light of evidence of communications with customers expressing confusion between the parties and the products they sell.

### 8. Degree of Care by Purchasers

Plaintiffs contend that the evidence of actual confusion by customers shows that even if the purchasers of these insurance products are sophisticated, they are confused in this case. Defendant argues that their clients are sophisticated purchasers paying high prices for insurance premiums and they exercise a high degree of care in these purchases. It argues that this factor weighs in its favor or at least shows that a fact question exists.

As with the fourth factor, the court finds that there is a fact issue with respect to the level of care exercised by PEO purchasers of insurance. Accordingly, this factor is neutral.

### 9. Conclusion

Although there are some fact questions with respect to the eight factors that the court must weigh in determining whether there is likelihood of confusion, the court determines that it may still, as a matter of law, determine that there is a likelihood of confusion. The court has reviewed the factors carefully. Four of the factors weigh in favor of Plaintiffs, one weighs in favor of Defendant, and three are neutral. The seventh factor, actual confusion, weighs heavily in favor of Plaintiffs. Considering the factors together, the court concludes that there is sufficient evidence to find a likelihood of confusion. "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the factors." *American Rice*, 518 at 229 (internal quotations, citation, and ellipsis omitted). Accordingly, the court concludes that Plaintiffs have shown that there is a likelihood of confusion caused by Defendant's use of the lighthouse name and graphics in its company name and advertisements. There is therefore no genuine issue of material fact as to Plaintiffs' claim that Defendant is liable for infringement pursuant to 15 U.S.C. § 1125(a), and Plaintiffs are entitled to judgment as a matter of law on this claim.

### C. Permanent Injunction

Plaintiffs also move for a permanent injunction restraining Defendant from using the word "lighthouse" to market, advertise, or promote its insurance products or services as long as Plaintiffs are using the word "lighthouse" for these purposes. Because Plaintiffs have moved only for partial summary judgment and they have an outstanding claim for infringement pursuant to 15 U.S.C. §

1114(a), the court **defers** entering a permanent injunction at this time and will enter one as to the section 1125(a) claim once this action is resolved.

V.  **Conclusion**

For the foregoing reasons, the court **grants in part** Plaintiffs' Motion for Partial Summary Judgment and **denies** Motion to Strike Plaintiffs' Summary Judgment Evidence. The court determines that there is no genuine issue of material fact with respect to Plaintiffs' claim that Defendant infringed pursuant to 15 U.S.C. § 1125(a) and **defers** issuing a permanent injunction. Remaining for trial are Plaintiffs' claim pursuant to 15 U.S.C. § 1114; Plaintiffs' damages claims; and Plaintiffs' request for a permanent injunction.

**It is so ordered** this 26th day of September, 2008.

Sam A. Lindsay
United States District Judge